[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 20, 2005
THOMAS K. KAHN
CLERK

No. 04-15055
Non-Argument Calendar

_____

D. C. Docket No. 03-00916-CV-A-N

ROBERT GRIFFIN,
ANNETTE GRIFFIN, as Individuals and
next friends and Administrators of the
Estate of Brandy Hobson, deceased,

Plaintiffs-Appellants,

versus

TROY STATE UNIVERSITY, an entity
organized under the laws of the State of Alabama, et al.,

Defendants,

EDWARD RICHARDSON,
DOUGLAS HAWKINS,
GERALD O. DIAL,
JOHN D. HARRISON,
ALLEN E. OWEN, III, et al., all as individuals,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(April 20, 2005)**

Before TJOFLAT, DUBINA and MARCUS, Circuit Judges.

PER CURIAM:

Robert Griffin and Annette Griffin, as next friends and Administrators of the Estate of Brandy Hobson, appeal the district court's dismissal of their 42 U.S.C. § 1983 claims, pursuant to Fed. R. Civ. P. 12(b)(6), against twelve defendants, in their individual capacities.[1] The Griffins filed this claim after their 17-year-old daughter, Brandy Hobson, a Troy State University ("TSU") student, was murdered in her on-campus dormitory during her first semester at the school. The Griffins alleged that by requiring students under the age of 19 to live on campus, TSU assumed a duty to provide adequate security for its students. The Griffins asserted that by virtue of the on-campus living requirement, Defendants formed a "special relationship" with their daughter and, thereafter, were deliberately indifferent to inadequate security and

---

[1] The district court previously dismissed the claims against these defendants, Troy State University ("TSU"), and the Trustees of the TSU Board, in their official capacities. That order is not at issue here.

2

control issues on the TSU campus. The Griffins alleged violations of Brandy's Fifth and Fourteenth Amendment rights, all in violation of § 1983.

The district court dismissed the complaint after finding the defendants were entitled to qualified immunity. On appeal, the Griffins argue this decision was wrong because TSU's requirement that certain students, such as Brandy Hobson, live on campus created a "special relationship," giving rise to a duty, under the Fourteenth Amendment, to protect those students from harm by third parties. Based on our thorough review of the record and careful consideration of the parties' briefs, we find no reversible error and affirm.

"We review the district court's grant of qualified immunity de novo to the extent the appeal concerns pure issues of law, including whether the underlying law governing official conduct was clearly established." Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004) (citing Smith v. Mattox, 127 F.3d 1416, 1418 (11th Cir. 1997). "We resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established

3

statutory or constitutional rights of which a reasonable person would have known." Lee, 284 F.3d at 1193 (internal quotation marks and citations omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (internal quotation marks and citations omitted). "Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" Id. (quoting GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998) (citation omitted)).

In order to receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee, 284 F.3d at 1194 (internal quotation marks omitted). In this case, there is no contention that the Defendants were not acting within their discretionary duties so we proceed to the next step at which the burden shifts to the plaintiff to prove that qualified immunity is not warranted. Id. The Supreme Court has articulated a two-prong test to aid in this analysis. See Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

4

constitutional right?" Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Second, if a constitutional right "would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" Vinyard, 311 F.3d at 1347 (quoting Saucier, 533 U.S. at 201, 121 S. Ct. 2151). It is the plaintiff's burden to establish both prongs of the foregoing test to defeat a defendant's motion for summary judgment based on qualified immunity. See Holloman ex real. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) ("If the plaintiff prevails on both prongs of this test, then the defendant is unable to obtain summary judgment on qualified immunity grounds.")

Here, the district court applied the two-part Saucier test and concluded that qualified immunity applied. On the first prong, the district court found no constitutional violation of substantive due process under the Fourteenth Amendment because the Supreme Court has held that substantive due process does not require a State to protect its citizens' life, liberty, or property against invasion by private actors. See DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 195, 109 S. Ct. 998 (1989) (holding "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security"). The

district court also found that the "special relationship" exception to DeShaney did not apply because Brandy Hobson voluntarily attended TSU and the on-campus housing requirement did not place Hobson in a custodial relationship. Finally, the district court concluded that the Griffins had not alleged conduct that rose to the level of arbitrary or conscious-shocking in the constitutional sense. See Waddell v. Hendry Sheriff's Office, 329 F.3d 1300, 1306 (to establish a substantive due process violation in a non-custodial situation, plaintiff must show "deliberate indifference to an extremely great risk of serious injury to someone in Plaintiffs' position" (citing McClendon v. City of Columbia, 305 F.3d 314, 326 (5th Cir. 2002) (stating that Plaintiff was required to demonstrate that "the defendant state official at a minimum acted with deliberate indifference toward the plaintiff"); Nix v. Franklin County School Dist., 311 F.3d 1373, 1376 (11th Cir. 2002) (concluding that deliberate indifference was insufficient to constitute a due-process violation in a non-custodial school setting)).

We agree with the district court's thorough analysis of the first Saucier prong and its conclusion that, on this record, the Griffins have not satisfied their burden to show that the Defendants' conduct violated a constitutional right.

Moreover, even if the Griffins met the first prong, they have not challenged the district court's decision on the second prong. The district court held that even if the

6

Griffins's substantive due process claim satisfied Saucier's first prong, the Griffins could not show the law on their substantive due-process claim was clearly established.

As the district court concluded, the Defendants' conduct would rise to the level of a substantive due process violation "only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003) (citing Collins v. City of Harker Heights, Tex., 503 U.S. 115, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992)). "'[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 1716, 140 L. Ed. 2d 1043 (1998)(quotation and citation omitted)). Moreover, "[d]eterminations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor *must be egregious--that is, shock the conscience--at the time the government actor made the decision."* Waddell, 329 F.3d at 1305 (emphasis in original). As we have noted, on appeal, the Griffins do not argue that they have met this standard, nor do they challenge the district court's conclusion on the issue. Again, it is their burden to satisfy both prongs of the qualified immunity analysis. Based on the Griffins' failure to challenge the second prong, we affirm the district court's grant of qualified immunity. Moreover, even if

7

we were to reach the second prong, we conclude, as we did at the first step, that the district court thoroughly considered and rejected every argument raised in this appeal. We find no error in its qualified-immunity analysis. Accordingly, we affirm the entry of summary judgment in favor of the defendants.

**AFFIRMED.**